UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REMA HEGAZY, *et al.*,

Plaintiffs,

v.

USCIS OFFICERS,

Defendants.
_______________________________/

Civil Action No. 25-10470

Linda V. Parker
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO *SUA SPONTE* DISMISS, IN PART, PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 19)**

## I. REPORT[1]

Plaintiffs Rema Hegazy and her minor child, M.T., (collectively, "Hegazy") have been granted permission to proceed *in forma pauperis* in this case, which, at bottom, challenges United States Citizenship and Immigration Services' ("USCIS") handling of various aspects of her and M.T.'s naturalization applications. (ECF No. 19). The Court now having assessed the sufficiency of the operative second amended complaint (*id.*) pursuant to 28 U.S.C. § 1915(e), **IT IS RECOMMENDED** that the individual capacity claims asserted therein against the unnamed USCIS Officers be **DISMISSED**.

### A. Background

Hegazy commenced this action on behalf of herself and M.T. on February 18, 2025.

[1] This case has been referred to the undersigned for management, hearing and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 26).

(ECF No. 1). In that short pleading, Hegazy sued the USCIS Office of the Chief Counsel and various USCIS officers ("Officers") in their official capacities, challenging a decision that denied her naturalization application and seeking permission for M.T. to attend a naturalization ceremony in Detroit rather than the one she was scheduled to attend in Chicago. (*Id.*). Following additional rulings by USCIS as to Hegazy's administrative appeal (ECF No. 16, PageID.127, 133), Hegazy was granted permission to file an amended complaint (ECF No. 13). Ultimately, on July 22, 2025, Hegazy filed her operative second amended complaint. (ECF No. 19) (the "SAC").

Whereas in her initial complaint Hegazy sued the Officers in their official capacities, her SAC purports to also bring individual capacity claims against the USCIS Officers who she claims were involved in the various administrative rulings she challenges. Specifically, in Count VI, titled, "Bivens Claim – Fifth Amendment Violations by Federal Officers," Hegazy asserts that the USCIS Officers "violated her clearly established constitutional rights under the Fifth Amendment, including the right to **due process**, **equal protection**, and **access to counsel**." (ECF No. 19, PageID.157) (emphasis in original). While Hegazy's allegations in Count VI are sparse, this claim seems to relate to her allegation that although she was the "**principal asylee** – the one through whom derivative benefits were conferred – [she] was singled out and denied naturalization, while her derivative beneficiaries were approved," and that "[t]his disparate treatment is arbitrary and lacks any rational basis, especially given that the same facts and legal grounds support all six applications [of her and her family members." (*Id.*, PageID.151, 157) (emphasis in original). In other words, Hegazy's "equal protection" claim seems to be that she was

"denied the rights, Privileges, and legal status that were granted to similarly situated individuals, her own husband[] and children . . ." (*Id.*, PageID.157).

After Hegazy filed the SAC, Defendants moved the Court to hold a status conference regarding the individual capacity claims against the Officers, as Defendants contend that including those claims in this civil action is improper and will needlessly delay its resolution. (ECF No. 25). As summarized by Defendants:

> Plaintiff's second amended complaint contains six counts. (Second Am. Comp., ECF No. 19, PageID.149–58.) Counts I through IV appear to be stated against USCIS officers in their official capacity. Count V is a claim under the Federal Tort Claims Act, to which the only proper defendant is the United States. *See* 28 U.S.C. § 2679. Count VI attempts to state a claim under *Bivens v. v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which would proceed against USCIS officers in their individual capacities.

(*Id.*, PageID.243).

Defendants then noted that the USCIS Officers had not been served in their individual capacities, and thus had not appeared as such in the case. (*Id.*, PageId.243). And, they noted that once served, formally bringing them into the case may be a "time-consuming" process due to the various levels of review needed to decide if they will be entitled to Department of Justice representation. (*Id.*). Thus, while not formally moving to dismiss Hegazy's individual capacity claims, Defendants moved for a status conference as to these issues, which the Court held on December 3, 2025. (ECF No. 25). Defendants also suggested that the Court "could reasonably employ [the] screening function" required by 28 U.S.C. § 1915, and find that Hegazy's individual capacity claims against the Officers should be dismissed, which would also "allow[] the official-capacity claims to be resolved

more efficiently." (*Id.*, PageID.244).

Having now considered Hegazy's SAC and the relevant law, the Court finds that the SAC's individual capacity claims against the USCIS Officers should be dismissed pursuant to 28 U.S.C. § 1915(e).

**B. <u>Legal Standards</u>**

Once a complaint is filed *in forma pauperis* under 28 U.S.C. § 1915(a), the court must test its sufficiency under § 1915(e). Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court "shall dismiss" a case at any time if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." In performing this review, the Court must construe the *pro se* plaintiff's complaint liberally and hold it to a less stringent standard than one drafted by an attorney. *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005).

A complaint fails to state a claim on which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

For the reasons discussed below, even construed liberally, the individual capacity claims asserted in the SAC against the USCIS Officers fail to state a claim upon which relief may be granted and should be dismissed.

## C. <u>Analysis</u>

Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State* . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . ." 42 U.S.C.A. § 1983 (emphasis added). Thus, § 1983 applies to persons who act under color of *state* law, not *federal* law. Since Hegazy's claims in this case make clear that the USCIS Officers' challenged actions all arose in connection with their federal service, there can be no individual capacity § 1983 claims against them in this case. While this does not mean that a person aggrieved by an individual acting under the color of federal law has no recourse against him or her individually, the pathways for any such relief are exceedingly narrow. As the U.S. Supreme Court explained in *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017):

> In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983. It entitles an injured person to money damages if a state official violates his or her constitutional rights. Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens,* Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.
>
> In 1971, and against this background, this Court decided *Bivens*. The Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. []. The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." []. The Court noted, however, that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. [].

> The Court, accordingly, held that it could authorize a remedy under general principles of federal jurisdiction. [].
>
> In the decade that followed, the Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations. In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.,* at 248–249, 99 S.Ct. 2264. And in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. See *id.,* at 19, 100 S.Ct. 1468. These three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

*Ziglar*, 582 U.S. 120, 130–31 (internal citations omitted).

Thus, while *Bivens* "established that the victims of a constitutional violation by an individual federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right," *Naresh v. United States Dep't of Homeland Sec.*, No. 2:19-CV-12815-TGB, 2020 WL 127950, at *2 (E.D. Mich. Jan. 10, 2020) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)), the Supreme Court "has made clear that expanding the *Bivens* remedy [beyond the three narrow types of claims identified above] is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (citation omitted). Indeed, the *Ziglar* Court noted (in 2017), that "it has 'consistently refused to extend *Bivens* to any new context or new category of defendants,'" and "has refused to do so for the past 30 years." *Id.* (quoting *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 68 (2001)). The Court then gave a laundry list of the types of claims for which it declined to extend

*Bivens* liability, including: "a First Amendment suit against a federal employer;" "a race-discrimination suit against military officers;" "a substantive due process suit against military officers;" "a procedural due process suit against Social Security officials;" "a procedural due process suit against a federal agency for wrongful termination;" "an Eighth Amendment suit against a private prison operator;" "a due process suit against officials from the Bureau of Land Management;" and "an Eighth Amendment suit against prison guards at a private prison." *Id.*

The Supreme Court has provided the following "test for determining whether a case presents a new *Bivens* context . . . If the case is different in a meaningful way from previous *Bivens* cases decided by this Court [*i.e.*, *Davis* and *Carlson*], then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.*, at 139-40.[2] A special factor is one that "cause[s] a court to hesitate" before answering in the affirmative "whether the Judiciary is well suited, absent congressional action or instruction,

[2] The Court cautioned that "even a modest extension is still an extension." *Id.* at 147.

to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136.

Additionally, the court must ask whether "there is an alternative remedial structure present in a certain case," which "alone may limit the power of the Judiciary to infer a new Bivens cause of action." *Id.*, at 137. "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007)).

Against this backdrop, which charts only the narrowest path for a new *Bivens* cause of action to be recognized, it is not surprising that numerous courts screening an IFP plaintiff's complaint which purports to bring *Bivens* claims against USCIS officials in their individual capacities have summarily dismissed those claims. For example, in *Bryan v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-341-LM-AJ, 2024 WL 3034629, at *1 (D.N.H. Feb. 27, 2024), the plaintiff sued USCIS and one of its field office employees, alleging that they had "unreasonably and illegally delayed issuing any decision on his naturalization application . . ." The court performed the IFP screening function provided for in 28 U.S.C. § 1915(e) and found that the plaintiff's individual capacity claims against the USCIS employee must be dismissed, explaining:

> The absence of a *Bivens* remedy [] provides the reason why plaintiff's claims for damages cannot proceed against the USCIS or [its employee] based on any alleged violation of his federal constitutional rights. [] *Bivens* claims are unavailable against federal agencies [], and a *Bivens* remedy is unavailable for the alleged unlawful actions of the USCIS in processing [plaintiff's] naturalization application. See *Usoh [v. USCIS*, 2023 WL 4634955, at *4] ("'the *Bivens* remedy

> should not be extended because, through the Immigration and Nationality Act ('INA'), Congress has established two remedies for individuals seeking judicial review of their naturalization applications,'" namely, 8 U.S.C. §§ 1421(c), 1447(b) [].

*Bryan*, 2024 WL 3034629, at *4, *report and recommendation adopted sub nom. Bryan v. US Citizenship & Immigr. Servs.*, No. 23-CV-341-LM-AJ, 2024 WL 3028404 (D.N.H. June 17, 2024).

A similar approach was taken in *Zhang v. Allen*, , No. 3:22-CV-02904-S (BT), 2023 WL 9850877, at *1 (N.D. Tex. Nov. 7, 2023) (dismissing claims under Section 1915 after declining to extend *Bivens* to a claim that USCIS employees had improperly denied plaintiff's I-130 Petition for Alien Relative and confiscated certain of his documents). Moreover, the Sixth Circuit Court of Appeals has recently held that "a Fifth Amendment *due process* claim is clearly a materially different context from a Fifth Amendment *equal protection* claim," like the one in *Davis* to which *Bivens* was found to apply. *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 640 (6th Cir. 2025). And, although *Davis* did extend *Bivens* to the plaintiff's Fifth Amendment due process gender discrimination claim, 442 U.S. 228, Hegazy's claim here, that she was treated differently administratively than her own family members, is clearly a "new context" to which *Bivens* does not apply. *See Rivera v. United States Citizenship & Immigr. Servs.*, No. 19 CIV. 3101 (KPF), 2020 WL 4705220, at *15 (S.D.N.Y. Aug. 12, 2020) (holding that plaintiff's "Fifth Amendment due process and equal protection claims" against USCIS employees were "far different than the three types of approved *Bivens* claims," including *Davis*, and thus "present a new context" to which *Bivens* does not apply).

Moreover, just as in *Bryan*, it would be inappropriate to extend *Bivens* here because

Hegazy may seek relief through an alternative source, "judicial review of [her] naturalization application[]" under applicable naturalization statutes. *Bryan*, 2024 WL 3034629, at *4. Indeed, as part of the relief she seeks in Counts I and II of the SAC, Hegazy asks the Court to "grant naturalization pursuant to the Court's inherent authority under 8 U.S.C. 1447(b)." (ECF No. 19, PageID.151, 153). And, in Count V of the SAC, Hegazy seeks relief under the Federal Tort Claims Act. (*Id.*, PageID.155-56).[3]

For all of these reasons, Hegazy's *Bivens* claims against the USICS Officers in their individual capacities fail as a matter of law and should be dismissed.

## II. RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that Hegazy's claims against the USCIS Officers in their individual capacities be **DISMISSED** pursuant to 28 U.S.C. § 1915(e).

Dated: December 4, 2025

s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation,

---

[3] As Defendants note in their motion for a status conference, "the only proper defendant [for a FTCA claim] is the United States." (ECF No. 25, PageID.242) (citing 28 U.S.C. § 2679). This is an accurate statement of the law because "[t]he FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (citing 28 U.S.C. § 2679(a)). *See also Wood v. Wilson*, No. 21-5153, 2021 WL 7161614, at *2 (6th Cir. Sept. 29, 2021). Thus, to the extent Hegazy purports to bring FTCA claims against the USCIS Officers in their individual capacities, those claims fail as a matter of law and should be dismissed.

any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 4, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager