UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REMA HEGAZY, *et al.*,

Plaintiffs,

v.

USCIS OFFICERS, et al.,

Defendants.
__________________________________/

Civil Action No. 25-10470

Linda V. Parker
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 26)**

*Pro se* plaintiffs Rema Hegazy ("Hegazy") and her minor child, M.T., bring this action against the United States Citizenship and Immigration Services Office of the Chief Counsel ("USCIS") and certain of its officers, principally to challenge the handling of various aspects of their naturalization applications.[1] One of Hegazy's chief claims relates to the fact that on June 28, 2024, USCIS denied her Form N-400 Application for Naturalization. USCIS did so because, at the time Hegazy submitted that application, she had only been a lawful permanent resident for about two years and ten months, whereas the applicable statute, 8 U.S.C. § 1427, prohibits an applicant from becoming naturalized "unless such applicant, (1) ***immediately preceding the date of filing*** his application for naturalization has resided continuously, ***after being lawfully admitted for permanent***

[1] This case has been referred to the undersigned for management, hearing and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 28).

***residence***, within the United States ***for at least five years*** . . ." 8 U.S.C. § 1427(a) (emphasis added).

On September 15, 2025, Hegazy filed a motion for partial summary judgment arguing principally that because she was granted asylum on August 29, 2017, she held "lawful status" as of that date, and thus satisfied the statute's aforementioned five-year requirement. (ECF No. 26, PageID.250). Accordingly, she asks the Court to grant her partial summary judgment by finding that she satisfies the statutory requirements for naturalization, and order USCIS to approve her N-400 Application. (*Id.*, PageID.252-53). Alternatively, she asks that, if "the Court determine[s] remand would cause further delay or injustice," it should "grant [her] naturalization directly under 8 U.S.C. § 1447(b) . . ." (*Id.*, PageID.253). Hegazy's motion was fully briefed (ECF Nos. 37, 40), and the Court held oral argument on March 25, 2026. Thereafter, with the Court's permission, Defendants filed a sur-reply regarding issues Hegazy raised in her reply brief and at the hearing. (ECF No. 44). For the reasons discussed below, Hegazy's motion for partial summary judgment should be denied.

## <u>Background</u>

Hegazy was born in Libya, and was granted asylum on August 29, 2017. (ECF No. 19-6, PageID.170; ECF No. 19-8). On September 21, 2018, she filed an I-485 application to adjust her status to that of a lawful permanent resident ("LPR"). (ECF No. 19-6, PageID.170). USCIS granted that application on February 2, 2022. (*Id.*). However, in light of a "1 year rollback" that applies to such applications, *see infra* at 5, 9-10, USCIS deemed Hegazy's LPR status to have begun on February 2, 2021. (ECF No. 19-6,

PageID.170). Although Hegazy claims that she was her family's "principal asylee," and later, "principal applicant," and that her family members (including M.T.) therefore "derived their status" through her, for whatever reason, they obtained LPR status well before her, on August 16, 2019. (ECF No. 19, PageID.149; ECF No. 19-4, PageID.187-88; ECF No. 26, PageID.251).[2]

On December 20, 2023, Hegazy submitted an N-400 Application for Naturalization. (ECF No. 19-3, PageID.163-64). Her daughter's N-600 Application for Certificate of Citizenship was submitted on the same day. (ECF No. 19-4, PageID.167). While her daughter's N-600 Application was granted, Hegazy's N-400 Application was denied. (ECF No. 19-6). The precise reason for that denial was explained to Hegazy in a USCIS letter dated June 28, 2024 (the "N-400 Denial Letter"):

> Generally, to qualify for naturalization under section 316 of the Immigration and Nationality Act (INA) [which section is codified at 8 U.S.C. § 1427], an applicant must:
>
> - Be 18 years of age or older at the time of filing Form N-400;
> - Be lawfully admitted for permanent residence;
> - Be a lawful permanent resident for ***at least 5 years*** ***<u>at the time of filing</u>*** Form N-400;
>
> * * *
>
> On February 2, 2021, you obtained permanent resident status . . . On June 17, 2024, you appeared for an interview to determine your eligibility for naturalization. . . . During the interview and review of your application, the [USCIS officer] noted that you filed your application for naturalization before you completed the required 5-

[2] In a later letter to Hegazy, a USCIS representative explained that "each Form I-485 is adjudicated separately. It is not clear why your Form I-485 took four years to process, but your case was processed later than your other family members and therefore, you do not all have the same date of permanent residency." (ECF No. 19-6, PageID.170).

> year residency requirement. In order to qualify for naturalization under section 316 of the [INA] you must have been a lawful permanent resident for 5 years ***before filing your application***. Although USCIS permits applicants to file Form N-400 up to 90 days before completion of the required period of residence, you submitted your application on December 20, 2023. This filing was not within the 90-day period.

(*Id.*, PageID.169-70) (emphasis added).

The N-400 Denial Letter went on to explain to Hegazy why she was wrong in her belief that she had obtained LPR status on September 21, 2018, and thus satisfied the 5-year LPR requirement when she submitted her N-400 Application on December 20, 2023:

> The September 21, 2018, date is the date the Form I-485 was received by USCIS. The date of adjustment for approved [LPR] applications filed by aslyees [sic] is 1 year before the date of the being approved for permanent residence. As previously noted, your [LPR] application was approved on February 2, 2022. On June 17, 2024, the Officer explained that your correct date of permanent residency should be February 2, 2021, to include the 1 year rollback. . . . A current check reveals that the correct date of permanent residency, February 2, 2021, is now reflected in USCIS systems.

(*Id.*, PageID.170).

Hegazy then filed an administrative appeal, this time suggesting that she obtained LPR status upon approval of her asylum status on August 29, 2017. (ECF No. 19-12). Again, USCIS explained to her why her reasoning was erroneous:

> You state that you have overcome the grounds of the denial because the denial did not fully address your claimed basis of eligibility, specifically that, because you were approved as an asylee in 2017 and asylee status is a "permanent" immigration status, you should be considered to have satisfied the residency requirement in INA 316. . . .
>
> * * *

> Fundamentally, your position appears to be that the approval of your asylum status by the Immigration Judge [on] August 29, 2017, is the same as being lawfully admitted for permanent residency, and that you should therefore be eligible to apply for naturalization five years from the time you became an asylee. This is incorrect. Admission as a Lawful Permanent Resident is a different legal status than that of an asylee. This is true even though you appear to have been residing in the US continuously since the Immigration Judge approved your request for asylum. Asylees may apply for Lawful Permanent Residency by filing a Form I-485 . . . You filed a Form I-485 on September 21, 2018, and it was ultimately approved on February 02, 2022. When an asylum-based Form I-485 is approved, the applicant is entitled to a "roll-back" on the effective date of residency one year prior to the approval: in your case, the "roll-back" means that you have been a Lawful Permanent Resident as of February 02, 2021. See INA 209(b).

(*Id.*, PageID.179-80).

Hegazy then commenced the instant action on February 18, 2025 (ECF No. 1), and ultimately, on July 22, 2025, she filed her operative second amended complaint. (ECF No. 19). In Count I of that pleading, Hegazy alleges violations of her Equal Protection rights under the Fifth Amendment to the United States Constitution because, "[d]espite being the **principal asylee-** the one through whom derivative benefits were conferred- [she] was singled out and denied naturalization, while her derivative beneficiaries were approved." (*Id.*, PageID.151) (emphasis in original). In Count II, Hegazy alleges violations of her Due Process rights under the Fifth Amendment to the United States Constitution due to various alleged failures by USCIS to properly adjudicate her N-400 Application. (*Id.*, PageID.152). In Count III, Hegazy admits that "[t]his claim doesn't seek to create a new cause of action," but instead simply asks the Court to not only approve her N-400 Application, but to also order that that approval "relates back" to the date upon which her

daughter M.T.'s N-600 was approved. (*Id.*, PageID.153-54). In Count IV, Hegazy seeks de novo judicial review of her N-400 Application under 8 U.S.C. § 1447(b)[3] both because she disagrees with USCIS's denial of her application and because she contends that once she commenced this action, "USCIS was divested of all authority to continue processing the application . . ." (*Id.*, PageID154-55). Finally, in Count V, Hegazy brings a claim under the Federal Tort Claims Act for "wrongful denial of naturalization." (*Id.*, PageID.155-56).[4]

On September 15, 2025, Hegazy filed a motion for partial summary judgment, in which she essentially parrots the argument she presented in her post-denial administrative appeal and that she "was lawfully admitted as a permanent resident" when her asylum application was granted. (ECF No. 26, PageID.250, 252). Defendants cogently responded by explaining the legal distinction between "asylee" status and "LPR" status, and that,

[3] Section 1447(b) provides, "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). This provision of the statute is irrelevant here, though, because USCIS ruled on Hegazy's application *before* she commenced this action. 8 U.S.C. § 1447(a). *See* Rizk v. Mayorkas, No. CV 22-5692 (RMB), 2024 WL 2860230, at *7 (D.N.J. June 6, 2024) ("If, however, the USCIS denied a naturalization application before the filing of a complaint under § 1447(b) in federal district court, 'a live controversy concerning the determination of the application—the subject matter of Section 1447—d[oes] not exist and the claim [i]s moot.'") (citations omitted). Thus, Hegazy's argument that her filing of the complaint in this case vested exclusive jurisdiction in this Court, rendering the USCIS denial of her N-400 application void, is incorrect. (ECF No. 26, PageID.250).

[4] Hegazy had also brought in Count VI a *Bivens* claim against the USCIS officer defendants in their individual capacities. (*Id.*, PageID.157). That claim has since been dismissed. (ECF Nos. 36, 42).

when Hegazy submitted her N-400 Application, she had only been an LPR for about two years and ten months, well shy of the required five years. (ECF No. 37). In her reply brief, Hegazy urged the Court to consider various sections of the USCIS Policy Manual. (ECF No. 40). Defendants, with the Court's permission, filed a sur-reply. (ECF No. 44).

For the reasons discussed below, while the Court recognizes the challenges and frustrations that resulted from Hegazy's LPR application having been processed so much more slowly than her family members' applications, the bottom line is that, at the time she submitted her N-400 Application, Hegazy did not meet Section 1427(a)'s 5-year LPR requirement. Thus, her fundamental challenge to the denial of her N-400 application lacks merit, and her motion for partial summary judgment should be denied.

**Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court

of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

A moving party with the burden of persuasion who seeks summary judgment – here, Hegazy – faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). The evidentiary showing must be so strong as to convince the Court that "no reasonable trier of fact could find other than for [the moving party]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 489 (6th Cir. 2024) (holding that where the movant has the burden of proof at trial, she discharges her initial summary-judgment burden by "show[ing] that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.") (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). If the movant discharges her burden, "the nonmoving party must come

forward with specific facts showing that there is a genuine issue for trial" to avoid summary judgment. *Matsushita*, 475 U.S. at 587.

**Analysis**

8 U.S.C. § 1427, the statute which enumerates the "requirements of naturalization," is unambiguous. As is relevant to Hegazy's case, the statute provides that a person may not be naturalized unless she has been a lawful permanent resident for at least five years immediately prior to submitting her application for naturalization. Specifically, the statute provides: "No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing [her] application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . ." 8 U.S.C. § 1427(a). The term "lawfully admitted for permanent residence" has a specific meaning as used in the statute. 8 U.S.C. § 1101(20) provides, "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(20).

As Defendants correctly note, "[a]sylee status is not the same as having been 'lawfully admitted for permanent residence'" because the former does not confer a right to *permanently* remain in the United States. (ECF No. 37, PageID.330) (citing *Stolaj v. Holder*, 577 F.3d 651, 657 (6th Cir. 2009)). That distinction is one reason why the law provides a mechanism for an asylee, like Hegazy was at the time, to apply to adjust her status to that of a lawful permanent resident. *See* 8 U.S.C. § 1159(b) ("The Secretary of

Homeland Security or the Attorney General . . . may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who [meets certain enumerated requirements]. Upon approval of an application under this subsection, the Secretary of Homeland Security or the Attorney General shall establish a record of the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application.").

The evidence is undisputed that Hegazy submitted an I-485 application to adjust her status to that of a lawful permanent resident on September 21, 2018, and that USCIS granted that application on February 2, 2022. (ECF No. 19-6, PageID.170). Giving Hegazy the benefit of the one-year "roll-back" provided for in 8 U.S.C. § 1159(b), Hegazy's LPR status began on February 2, 2021. Because that date was only about two years and ten months before she submitted her N-400 Application for naturalization on December 20, 2023, USCIS did not err in determining that Hegazy did not satisfy Section 1427(a)'s five-year LPR status requirement that must be met "immediately preceding the date of filing [the N-400 Application] . . ." (ECF No. 19-3, PageID.163-64). Accordingly, Hegazy's principal argument that she satisfied all requirements for naturalization at the time she filed her N-400 Application lacks merit.

Hegazy's other arguments also lack merit. First, she asks the Court to consider the case of *Azumah v. United States Citizenship & Immigr. Servs.*, 107 F.4th 272 (4th Cir. 2024). But that case involved distinguishable facts and a nuanced legal issue not present in Hegazy's case. Azumah was a citizen of Ghana, and in 2010 "was admitted to the United States as a lawful permanent resident." *Azumah*, 107 F.4th at 274. In 2012, Azumah

pleaded guilty to a misdemeanor count of embezzlement after having been caught stealing clothes from a department store. Azumah returned to Ghana in 2013 to visit family for a month. When he returned to the United States in early 2014, he was "charged as inadmissible based on his embezzlement conviction" and was released. Azumah ultimately pleaded to the inadmissibility charge, but he and the Department of Homeland Security stipulated to dismiss the removal proceedings with prejudice, which stipulation was granted by the court. *Id.* at 275.

Azumah applied for naturalization in December 2018, but USCIS opposed his application, contending that Azumah's embezzlement conviction rendered him "an applicant for admission when he returned from his trip abroad in 2014 and deemed inadmissible." *Id.* USCIS determined that Azumah was not in LPR status at the time he submitted his naturalization application because he was not "lawfully admitted" to the United States "upon [his] last entry" in 2014. *Id.* Azumah brought a civil action in federal district court in the Eastern District of Virginia, which court ruled in favor of USCIS.

On appeal, the Fourth Circuit reversed, finding that the district court had erred in focusing on whether Azumah was "lawfully" admitted in 2014 when he returned to the United States from his trip abroad. *Id.* at 276. Instead, the Fourth Circuit held that Azumah achieved LPR status when he was first admitted into the United States, and that because the removal proceedings against him were dismissed, he never lost that status. *Id.* Thus, when Azumah filed his naturalization application, he was not only in LPR status, but had been for more than five years, satisfying the very requirement at issue in Hegazy's case. *Id.*

Hegazy's case is different because, as discussed above, when she filed her N-400 Application, she had only been in LPR status for two years and ten months. Accordingly, the *Azumah* case does not change any of the above analysis.

Hegazy also cites *Turfah v. United Stats Citizenship & Immigr. Servs.*, 845 F.3d 668 (6th Cir. 2017), for the proposition that the fact that her "derivatives were granted lawful permanent residence and citizenship based on [Hegazy's] asylum grant, confirm[s] the agency's recognition of the validity and finality of her status." (ECF No. 40, PageID.359). But *Turfah* merely held that the *denial* of the plaintiff's naturalization application was appropriate because, due to the fact that he had "arrived in the United States 24 days before his father," when his visa only allowed him to "accompany[] or follow[]" him into the United States, he was not "lawfully admitted for permanent residence." *Turfah*, 845 F.3d at 670-71. That holding does not imply that the converse must be true, though the Court did note the "sympathetic" and "exceptional" circumstances of Turfah's case and thus "encourage[d] the government to use any discretion that it might have to overcome the current impasse on Turfah's road to naturalization." *Id.* at 675.

Finally, Hegazy urges the Court to find that certain portions of the USCIS Policy Manual support her position because the "USCIS policy requires that asylum granted by an Immigration Judge be treated as lawful admission absent evidence to the contrary." (ECF No. 40, PageID.359). This argument is flawed in a few respects. Again, the issue isn't whether Hegazy was in the United States "lawfully" for five years before she filed her N-400 application for naturalization, but whether she had been in ***LPR status*** for that period of time. 8 U.S.C. § 1427(a). Moreover, USCIS filed copies of the relevant sections of its

Policy Manual, and nothing therein supports Hegazy's interpretation. First, Chapter 5(F)(1) provides that "[t]he date of adjustment for aliens with an approved asylum-based adjustment applications is 1 year before the date of being approved for permanent residence." (ECF No. 44-2, PageID.382). Similarly, Chapter 2(A)(3), which relates to a "lawful permanent resident at time of filing and naturalization," provides that "[a]n asylee is generally considered an LPR 1 year before the date USCIS approves the adjustment application."[5] (ECF No. 44-3, PageID.386).

For all of these reasons, Hegazy's arguments lack merit and her motion for partial summary judgment should be denied.[6]

**Conclusion**

For the reasons stated above, **IT IS RECOMMENDED** that Hegazy's motion for partial summary judgment **(ECF No. 26)** be **DENIED**.

Dated: August 12, 2026

s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

[5] The Court notes that the Policy Manual also indicates that "A person is generally considered an LPR at the time USCIS approves the applicant's adjustment application or at the time the applicant is admitted into the United States with an immigrant visa." (ECF No. 44-3, PageID.386). However, Hegazy does not allege that she falls into the latter category of applicants.

[6] In their response brief, Defendants argue that, in addition to denying Hegazy's motion for partial summary judgment, the Court should grant summary judgment in their favor pursuant to Fed. R. Civ. P. 56(f)(1). (ECF No. 37, PageID.331). While the foregoing analysis may mean that certain of Hegazy's claims lack merit, the Court declines to recommend that summary judgment in Defendants' favor be granted as to all of her claims at this time. Defendants did not brief the merits of Hegazy's other claims, and since this case has been pending, Hegazy has surpassed the five years of LPR status needed to become a naturalized United States citizen. It is unclear how, if at all, that fact impacts Hegazy's claims in this case, and more importantly, her "road to naturalization." *Turfah*, 845 F.3d at 675.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager