UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REMA HEGAZY, *et al.*,

Plaintiffs,

Case No. 25-cv-10470
Honorable Linda V. Parker

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES OFFICE OF THE CHIEF COUNSEL, *et al.*

Defendants.
__________________________________/

**OPINION AND ORDER (1) AFFIRMING MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANTS' MOTION FOR STAY [ECF NO. 33], (2) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 46], AND (3) REJECTING PLAINTIFFS' OBJECTIONS IN RESPONSE TO THE REPORT AND RECOMMENDATION [ECF NO. 47]**

The Court, having reviewed the Report and Recommendation ("R&R") of Magistrate Judge David R. Grand and the remaining record, adopts the R&R, denies Plaintiffs' Motion for Partial Summary Judgment, and rejects Plaintiffs' objections for reasons outlined below. Additionally, this Court affirms Magistrate Judge Grand's October 2, 2025, Order Granting Defendants' Motion for Stay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Rema Hegazy and her minor child, M.T., ("Plaintiffs" or "Hegazy") are proceeding pro se and in forma pauperis in this lawsuit — which was initiated

on February 18, 2025 — against the United States Citizenship and Immigration Services ("USCIS") Office of Chief Counsel. (ECF No. 1.) The case arises from Hegazy's pursuit to be a naturalized United States citizen. Born in Libya, Hegazy was granted asylum on August 29, 2017. (ECF No. 19-6 at PageID.170; ECF No. 19-8.) She then filed to adjust her status from an asylee to a Lawful Permanent Resident ("LPR") on September 21, 2018. (ECF No. 19-6 at PageID.170.) The USCIS accepted her LPR application on February 2, 2022. (*Id.*) However, because Hegazy was an asylee, her LPR status was adjusted back one year, making her LPR status effective February 2, 2021. (ECF No. 19-6 at PageID.170); *see also* 8 C.F.R. § 209.2(f).

On December 20, 2023, Hegazy submitted an N-400 Application for Naturalization. (ECF No. 19-3 at PageID.163-64.) Her daughter's N-600 Application for Certificate of Citizenship was also submitted that day. (ECF No. 19-4 at PageID.167.) Hegazy's daughter's application was accepted while her application was denied. (ECF No. 19-6.) The denial letter explained that Hegazy failed to meet the requirement that she be an LPR for at least five years at the time of filing an N-400 Application. (ECF No. 19-6 at PageID.169-70.) Additionally, the letter distinguished between the time she filed for LPR status, September 21, 2018, and the date her application was approved for LPR status, February 2, 2022 (with a one-year roll-back adjustment, the correct date is February 2, 2021). (*Id.* at

PageID.170.) Hegazy administratively appealed, arguing she gained LPR status when she received asylum approval on August 29, 2017. (ECF No. 19-12.) USCIS denied her appeal because her reasoning was wrong — she obtained LPR status on February 2, 2021, with the one-year roll-back adjustment. (*Id.*, PageID.179-80.)

Hegazy then commenced litigation on February 18, 2025 (ECF No. 1) and filed an operative Second Amended Complaint on July 22, 2025 (ECF No. 19). Hegazy alleges the following claims: Count I – violations of her Equal Protection rights under the Fifth Amendment to the United States Constitution because, "[d]espite being the principal asylee- the one through whom derivative benefits were conferred- [she] was singled out and denied naturalization, while her derivative beneficiaries were approved"; Count II – violations of her Due Process rights under the Fifth Amendment to the United States Constitution due to various alleged failures by USCIS to properly adjudicate her N-400 Application; Count III – that "[t]his claim doesn't seek to create a new cause of action," but instead asks the Court to not only approve her N-400 Application, but to also order that approval "relates back" to the date upon which her daughter M.T.'s N-600 was approved; Count IV – her N-400 Application under 8 U.S.C. § 1447(b)[1] should be

[1] According to Section 1447(b), "[i]f there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with

reviewed de novo because she disagrees with USCIS's denial of her application and because she contends that once she commenced this action, "USCIS was divested of all authority to continue processing the application"; and Count V – there was a "wrongful denial of naturalization" under the Federal Tort Claims Act. (*Id.*) Her sixth claim (*Bivens*) was dismissed. (ECF Nos. 36, 42.)

Hegazy filed a motion for partial summary judgment on September 15, 2025, asserting that she was "lawfully admitted as a permanent resident" when her asylum application was granted, without mention of her other claims. (ECF No. 26 at PageID.250-52.) Defendants responded opposing the relief sought by Hegazy since she filed her application for naturalization a couple of years earlier than what was statutorily required. (ECF No. 37 at PageID.329-30.) Additionally, Defendants explained the legal difference between "asylee" and a "Lawful Permanent Resident." (ECF No. 37 at PageID.329-30.) Defendants also stated that she would be "eligible" to apply for naturalization on "February 2, 2026."[2] (*Id.* at PageID.325-26.) In its response, Defendants requested Magistrate Judge Grand to "deny the Plaintiff's motion for partial summary judgment and grant summary judgment for the nonmovants under Fed. R. Civ. P. 56(f)(1), after giving

---

appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). However, since USCIS decided on Hegazy's application before she started litigation — in both a denial letter and in response to her administrative appeal — this Court agrees with Magistrate Judge Grand that this provision of the statute is inapplicable here.

[2] Defendants also noted in its denial letter to her in June 2024 that USCIS permits applicants to file N-400 up to 90 days before completion of the required period of residence and that Hegazy's application was not within the 90-day period. (ECF No. 37 at PageID.325.)

Plaintiff notice and a reasonable opportunity to respond."[3] (*Id.* at PageID.331.) After Magistrate Judge Grand held oral argument, the Defendants filed a sur-reply brief regarding the issues raised at the hearing and in Hegazy's reply brief. (ECF No. 44.) Magistrate Judge Grand then issued an R&R on August 12, 2026 (ECF No. 46), that Hegazy's motion for partial summary judgment should be denied since her argument lacked merit; Magistrate Judge Grand also declined to recommend summary judgment in Defendant's favor as to all of Hegazy's claim at the time. (ECF No. 46.)

Separately, after Hegazy filed her motion for partial summary judgment, Defendants requested a motion to stay on October 1, 2025, due to the lapse in appropriations until Congress restored funding. (*See* ECF No. 31.) Magistrate Judge Grand granted the motion to stay on October 2, 2025. (ECF No. 32.) Hegazy objected to the granting of the stay. (ECF No. 33.) Magistrate Judge Grand told the parties on a December 3, 2025, telephonic conference that the stay was lifted, as noted by a minute entry. Additionally, on December 15, 2025, Magistrate Judge Grand ordered the stay to be lifted through a text-only order.

[3] However, Defendants did not file a motion for summary judgment. This Court has held previously that "Rule 56(f)(1) does not afford parties a separate mechanism seeking summary Judgment" especially when they do not file a motion for summary judgment. *See Hartford Fire Insurance Co. v. Trynex, Inc.*, Case No. 11-cv-13360, 2013 WL 12183610, at *1 (E.D. Mich. July 25, 2013). In *Hartford*, the Court explained "Rule 56(f)(1) did not create a substitution for cross-motion to summary judgment" and that doing so "would be a contradiction" and "[i]f a party moved for summary judgment, by definition, it cannot be considered a nonmovant and thus Rule 56(f)(1) would be inapplicable." *Id.* (quoting *Nat'l Exch. Bank & Trust v. Petro-Chemical Sys., Inc.*, No. 11-134, 2013 WL 1858621, at *1 (E.D. Wis. May 1, 2013)). Put simply, Rule 56(f)(1) is about the Court's power to grant relief. Therefore, Defendants request to grant summary judgment to the nonmovants under Rule 56(f)(1) is improper.

## II. LEGAL STANDARD:

Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may be referred to and decided by a Magistrate Judge. Fed. R. Civ. P. 72(a). When reviewing a Magistrate Judge's order on non-dispositive motions, a "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

When objections are filed to a Magistrate Judge's report and recommendation on a dispositive matter, the court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court, however, "is not required to articulate all of the reasons it rejects a party's objections." *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted). A party's failure to file objections to certain conclusions of the report and recommendation waives any further right to appeal on those issues. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to certain conclusions in the Magistrate Judge's report releases the court from its duty to independently review those issues. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III. DISCUSSION

### A. Magistrate Judge's Order Granting Defendants' Motion to Stay (ECF No. 33)

The United States Government experienced a forty-three-day shutdown due to lapse in appropriations on September 30, 2025, causing a prohibition on work for some employees, including Defendants, except in limited circumstances which did not apply here. Defendants requested the court stay litigation until Congress restored appropriations. Magistrate Judge Grand's decision to grant the stay was not clearly erroneous or contrary to the law, and, subsequently, after the government shutdown ended, Magistrate Judge Grand lifted the stay. Thus, these developments render Hegazy's objections and motion to vacate the stay moot.

Accordingly, this Court **REJECTS** Plaintiffs' objections and **AFFIRMS** Magistrate Judge Grand's October 2, 2025, Order granting the stay.

### B. Magistrate Judge Grand's Report and Recommendation Denying Plaintiffs' Motion for Partial Summary Judgment (ECF No. 46)

Hegazy filed a Motion for partial summary judgment, seeking determination that USCIS wrongly denied her naturalization application. Magistrate Judge Grand concluded that USCIS did not err in determining that Hegazy did not meet the statutory five-year requirement of Lawful Permanent Resident status by the time she filed her N-400 Application for naturalization. Since Hegazy failed to meet all

the N-400 Application requirements at the time she applied in 2023, her claim lacked merit. Thus, Magistrate Judge Grand recommended her motion for partial summary judgment be denied. In response, Hegazy filed twelve objections.[4] The Court carefully reviewed the objections and rejects each of them as they failed to present a misapplication of the law in Magistrate Judge Grand's R&R.

**Objection One**

Hegazy's first objection is that the R&R improperly relies on highlighted and incomplete portions of Defendants' sur-reply appendices. (*See* ECF No. 47 at PageID.447-48.) However, Hegazy provides no argument that reliance on Defendants' appendices was material to the recommendation to dismiss. Additionally, even if it was material, this objection fails to identify an error made by Magistrate Judge Grand. The objection is **REJECTED.**

**Objection Two**

Hegazy's second objection is that the R&R accepts the 2021 LPR start date as an established fact. (*See* ECF No. 47 at PageID.448-49.) More specifically, Hegazy argues:

[4] Defendants also filed a response to Hegazy's objections on August 27, 2026. (ECF No. 48.) In its response, the government declares, "I hereby certify that on August 27, 2026, I served the foregoing paper on the pro se Plaintiff by U.S. Mail." (*Id.* at PageID.473.) Hegazy filed a reply to her own objections without leave of the Court. (ECF No. 49.) "Neither the Local Rules nor the Federal Rules of Civil Procedure provide a right to file a reply in support of objections to an R&R." *Shophar v. Gyllenborg*, No. 17-cv-13900, 2018 WL 4442270, at *3 (E.D. Mich. Sept. 18, 2018). While the Court will not consider the arguments raised in Hegazy's reply (ECF No. 49), it will note that the postmark on the government's response (ECF No. 48) that was received by Hegazy has a date of September 11, 2026, not August 27, 2026. (*See* ECF No. 49.) Defendants should demonstrate more diligence in ensuring its papers are mailed on the date it certifies to the Court.

> Plaintiff's green-card adjustment date is February 2, 2022; five years from that date is February 2, 2027. Plaintiff has not yet reached five years of permanent residence measured from the date on her Permanent Resident Card. Defendants' sur-reply nonetheless assumes an operative date of 2021, and the R&R adopts that assumption without identifying any supporting agency record. Plaintiff objects to treatment of the 2021 date as an established fact. . . . Plaintiff further objects because adopting the unsupported 2021 date would eliminate her alternative path to citizenship: if the Court does not reach a decision on the citizenship claim presented here, Plaintiff intends to rely on the adjustment-based date of February 2, 2022 (with eligibility to apply on or about November 2, 2026) to seek naturalization through the ordinary process.

(ECF No. 47 at PageID.449.) It is this Court's view that Hegazy misunderstands her effective LPR date. The evidence is undisputed that February 2, 2021, was her LPR start date. Additionally, Defendants USCIS, who has authority to review and approve or deny her N-400 Application, should Hegazy seek "naturalization through the ordinary process" — also agrees that "there is no genuine dispute of fact that Hegazy attained lawful permanent resident status as of February 2, 2021." (ECF No. 37 at PageID.329; ECF No. 19-6 at PageID.170.) While USCIS granted her LPR application on February 2, 2022, (ECF No. 19-6, PageID.170), Hegazy benefits from a one-year "roll-back" provided for in 8 U.S.C. § 1159(b). Thus, Hegazy's LPR status began on February 2, 2021. This is also supported by USCIS's N-400 denial letter sent to Hegazy on June 28, 2024, which she presented to this Court as an exhibit to her Second Amended Complaint: "[o]n February 2, 2021, you obtained permanent resident status." (ECF No. 19-6 at PageID.170.)

The letter continued to explain that February 2, 2021, was Hegazy's effective LPR start date:

> The September 21, 2018, date is the date the Form I-485 was received by USCIS. The date of adjustment for approved [LPR] applications filed by aslyees [sic] is 1 year before the date of being approved for permanent residence. As previously noted, your [LPR] application was approved on February 2, 2022. In error, your permanent resident card indicated you were a permanent resident as of February 2, 2022. On June 17, 2024, the Officer explained that your correct date of permanent residency should be February 2, 2021, to include the 1 year rollback. . . . A current check reveals that the correct date of permanent residency, February 2, 2021, is now reflected in USCIS systems.

(*Id.*) Additionally, "USCIS permits applicants to file Form N-400 up to 90 days before completion of the required proof of residence . . . ." (*Id.*) This means that Hegazy was eligible to apply for naturalization 90 days before February 2, 2026.[5] Consequently, if Hegazy stands by her misstated calculation that her LPR effective date is February 2, 2022, she will not meet the five-year requirement until February 2, 2027. This position is detrimental to her ultimate goal. The R&R cited the correct LPR effective start date in its analysis. The objection is **REJECTED**.

**Objection Three**

Hegazy's third objection is that the R&R improperly narrows 8 U.S.C. § 1427(a) to adjustment of status instead of encompassing initial admission. (*See* ECF No. 47 at PageID.449-51.) In particular, Hegazy argues that her motion

---

[5] Defendants also agree that "[since] she has lawful permanent resident status effective February 2, 2021, [Hegazy] will not meet the requirement of 8 U.S.C. 1427(a) to have resided as a lawful permanent resident for five years until February 2, 2026." (*See* ECF No. 37 at PageID.324.)

concerns her naturalization eligibility more broadly, but the R&R's analysis addresses adjustment only, and that USCIS's own policy requires broader construction. Hegazy's objection fails to understand the text of the law and its corresponding regulation as it relates to the adjustment of status of a person granted asylum. 8 C.F.R. § 209.2(f) states, "USCIS will notify the applicant in writing of the decision on his or her application. . . . If the application is approved, USCIS will record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application, but not earlier than the date of the approval for asylum . . . ." Thus, Magistrate Judge Grand's finding that Hegazy had the benefit of a one-year "roll-back" is accurate and provides helpful information as to when Hegazy's LPR status began. The objection is **REJECTED**.

**Objection Four**

Hegazy's fourth objection is that the R&R erroneously treats *Azumah v. United States Citizenship & Immigr. Servs*., 107 F.4th 272 (4th Cir. 2024), as immaterial and distinguishable. (*See* ECF No. 47 at PageID.451-54.) The facts in *Azumah* are inherently different from Hegazy — the Fourth Circuit found *Azumah* to be in LPR status for more than five years at the time he applied for naturalization, thus satisfying one of the naturalization requirements that Hegazy

did not at the time she filed her N-400 application. Magistrate Judge Grand correctly distinguished the case. The objection is **REJECTED**.

**Objection Five**

Hegazy's fifth objection is that the R&R does not address the legal significance of the principal-derivative chronology in *Turfah v. United Stats Citizenship & Immigr. Servs.*, 845 F.3d 668, 673 (6th Cir. 2017). (*See* ECF No. 47 at PageID.454-55.) *Turfah* also had very different facts from Hegazy. *Turfah* received a visa as a child "accompanying or following to join" his parent under 8 U.S.C. § 1153(d). *See Turfah v. United Stats Citizenship & Immigr. Servs.*, 845 F.3d 668, 673 (6th Cir. 2017). The Sixth Circuit found *Turfah* was not lawfully admitted into the United States under LPR status because he entered the United States before his father was admitted, violating the requirement of his derivative visa. *Id.* at 675. Magistrate Judge Grand correctly analyzed the case. The objection is **REJECTED**.

**Objection Six**

Hegazy's sixth objection is that the R&R left unresolved the timing disparity between Hegazy's LPR application and her family's application. (*See* ECF No. 47 at PageID.455-56.) Magistrate Judge Grand has the power to rule on matters in his legal authority and jurisdiction. The reason for USCIS' processing delay of Hegazy's LPR application is not for the Magistrate Judge to resolve. In the R&R it

was noted in the second footnote that, "[i]n a later letter to Hegazy, a USCIS representative explained that "each Form I-485 is adjudicated separately. It is not clear why your Form I-485 took four years to process, but your case was processed later than your other family members and therefore, you do not all have the same date of permanent residency." (ECF No. 46 at PageID.428.) The objection is **REJECTED**.

**Objection Seven**

Hegazy's seventh objection is that the R&R does not address Hegazy's 2017 final asylum order and USCIS recordkeeping obligations. (*See* ECF No. 47 at PageID.456-57.) The R&R was written in response to Hegazy's motion for partial summary judgment regarding the denial of her N-400 Application. Magistrate Judge Grand observed how USCIS explained that relying on the date Hegazy was approved to be an asylee in 2017 was erroneous. Additionally, the recordkeeping mechanism raised by Hegazy is not relevant, and even if it were relevant, it would not be material to Magistrate Judge Grand's recommendation to deny her partial summary judgment motion. The objection is **REJECTED**.

**Objection Eight**

Hegazy's eighth objection is that the R&R misapplies the Rule 56 standard because Defendants did not present a genuine dispute of material fact. (*See* ECF No. 47 at PageID.457-58.) This challenge is without merit and fails to clearly

show how Magistrate Judge Grand's R&R misapplied any facts and law. The objection is **REJECTED**.

**Objection Nine**

Hegazy's ninth objection is that the R&R did not apply the independent de novo review required under 8 U.S.C. § 1421(c). (*See* ECF No. 47 at PageID.458-59.) However, Hegazy failed to clearly show how Magistrate Judge Grand's R&R was not reviewed independently. The objection is **REJECTED**.

**Objection Ten**

Hegazy's tenth objection is that 8 U.S.C. § 1429 does not independently resolve the disputed LPR status calculation. (*See* ECF No. 47 at PageID.459-60.) As stated in this Court's analysis of Hegazy's second objection, if taken as true, Hegazy's argument would disqualify her from applying for naturalization until well past her date of eligibility. Defendants already stated that Hegazy "would meet the statutorily required five years of LPR status prior to filing on February 2, 2026," since her effective LPR start date was February 2, 2021. (ECF No. 37 at PageID.325.) The objection is **REJECTED**.

**Objection Eleven**

Hegazy's eleventh objection is that her completion of the remaining naturalization requirements narrows the dispute to only the calculation issue. (*See* ECF No. 47 at PageID.460.) For the same reasons stated above and in this Court's

rejection of Hegazy's second objection, this claim also fails and is unhelpful to Hegazy's position. The objection is **REJECTED**.

**Objection Twelve**

Hegazy's twelfth objection is that her remaining claims are expressly preserved by "Footnote 6 of the R&R." (*See* ECF No. 47 at PageID.460-61.) This is not an objection, but rather an affirmation of what Magistrate Judge Grand already observed in the sixth footnote of his R&R.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the report and recommendation of Magistrate Judge Grand (ECF No. 46) and **REJECTS** Plaintiffs' objections (ECF No. 47). Accordingly, Plaintiffs' motion for partial summary judgment (ECF No. 26) is **DENIED.**

Additionally, the Court **AFFIRMS** Magistrate Judge Grand's October 2, 2025, Order granting the Defendants' motion to stay (ECF No. 32) and **DENIES AS MOOT** Plaintiffs' motion to vacate the stay (ECF No. 33).

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 22, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 22, 2026, by electronic and/or U.S. First Class mail.

s/R. Thieme
Case Manager